UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

 Plaintiff,

v.

              Case No. 05-cr-98-pp

FRED D. HOWARD,

 Defendant.

---

### ORDER DENYING DEFENDANT'S MOTION UNDER 18 U.S.C. §3582(c)(1)(A)(i) TO MODIFY HIS SENTENCE (DKT. NO. 42)

---

On June 13, 2005, the defendant pled guilty to an indictment charging him with conspiring with Eric Monroe and others to possess with intent to distribute cocaine. Dkt. No. 18. At the sentencing on May 17, 2006, Judge Charles N. Clevert, Jr. sentenced the defendant to serve 360 months in custody. Dkt. Nos. 33, 34. On July 20, 2015, this court reduced the sentence to 292 months based on the U.S. Sentencing Commission's reduction of the guideline range for his offense of conviction. Dkt. No. 39.

On June 29, 2020, the court received the defendant's motion to modify his sentence under 18 U.S.C. §3582(c)(1)(A)(i). Dkt. No. 42. He asks the court to release him to home confinement until his September 25, 2026 release date. Id. at 1. The plaintiff explains that he is at the minimum-security satellite camp at Estill, South Carolina and says that the prison is "in a dire state of emergency that has placed [him] in grave danger." Id. at 5. He describes the prison as having poor air conditions and ventilation, which causes the inmates

1

to need to use fans. Id. at 5-6. He asserts that "[s]ome prisons tell the inmates that they are not allowed to use fans as this can cause the spread of the Coronavirus thus causing the inmates to suffer the heat all while being confined 24/7 to their dorms and not allowed outside." Id. at 6.

The plaintiff contends that the prison is not giving inmates cleaning products, "causing the inmates to use sanitizer they obtain on their own and against the rules to be poured across their tee shirts to clean their rooms." Id. He says that once a week, prison staff use bleach to mop the hallways, but that there are no supplies provided for inmates in their living quarters. Id. He asserts that the corrections officers "rotate between the two prisons[1] carrying germs from one to the other with no regard for wearing any face covering unless during the day shift when supervisors are present." Id. He says that there are four inmates per 6' by 10' cube, sleeping eighteen inches apart and making social distancing impossible. Id.

The plaintiff references a lawsuit filed by the ACLU, claiming that prisons are "shorting the numbers of inmates who have contracted the virus." Id. He does not explain which lawsuit—the ACLU has sued on behalf of inmates at Oakdale Federal Detention Centers in Louisiana, at FCI Elkton in Elkton, Ohio and at the Butner, North Carolina prison complex, possibly others. He describes an incident where an inmate collapsed and a guard sprayed the inmate with mist to disinfect him, but does not say if this occurred at Estill or

---

[1] Presumably the minimum security camp and a medium-security facility, also located in Estill.

if he read or heard about this occurrence at another facility. Id. He alleges that the Bureau of Prisons' reports about the numbers of infected inmates at various facilities are "severely false," and that the BOP is covering up "false recordings." Id. at 7. He asserts that "[s]everal inmates throughout the system" have reported that the cleaning solutions given to inmates are nine parts water to one part cleaner, and that "[m]ost" inmates get four ounces every two weeks in a cup to clean their cells—again, it is not clear whether the plaintiff is relating facts occurring at Estill, or stories that he has read from other institutions. Id. He alleges that inmates are supposed to be wearing masks "yet the prison system does not have a sufficient amount to give leaving many prisoners unprotected." Id. at 8. Whether he makes this allegation regarding Estill or as a general matter as to the BOP is not clear.

The plaintiff asserts that he sought compassionate relief from the warden at Estill "well over 30 days prior to this filing." Id. at 14. He says that the warden "handed over the authority of who is released to his Unit Team members." Id. The motion does not indicate whether the plaintiff received a response to his request.

The plaintiff alleges that he "suffers from severe fear of contracting the virus." Id. at 18. He says that his mother suffers from Type 2 diabetes, hypertension, a bulging disk in her back, neuropathy, arthritis and carpal tunnel syndrome in both hands. Id. Finally, the plaintiff asserts that he has signed up for classes while in custody, has learned skills he could use to get a

3

Case 2:05-cr-00098-PP   Filed 08/18/20   Page 3 of 14   Document 54

job, has a means of transportation upon release and can live with his mother, who will turn him in to authorities if he violates the law. Id. at 19-23.

The court asked Federal Defender Services to review the motion to determine whether it might file something on the defendant's behalf. Dkt. No. 45. Federal Defender Services responded that due to the demands on its time, it could not file anything for the defendant, but emphasized that it was not taking a position on whether the court should grant the defendant's motion. Dkt. No. 46.

The court also asked probation and the government to weigh in on the defendant's motion. Dkt. No. 47. Probation reports that as of July 9, 2020, there were no confirmed cases of COVID-19 among inmates at Estill, and six confirmed cases among staff. Dkt. No. 48 at 1. See also BOP COVID-19 map, available at https://www.bop.gov/coronavirus (last checked August 17, 2020), showing no confirmed cases among inmates and ten confirmed cases among staff. Probation reports that BOP medical records show that the plaintiff has no known medical conditions and that he has not been treated for any medical conditions, though he did receive daily temperature checks for the week of July 2 through July 7, 2020. Id. at 2. BOP records also show that since 2007, the defendant has had five disciplinary violations—fighting with another person, possession of unauthorized items (twice), being in an unauthorized area and possessing a hazardous tool. Id. The BOP confirms that the plaintiff has participated in thirty-three educational classes or programs, including a seven-month housekeeping apprenticeship. Id. He will be eligible for home detention

4

on March 25, 2026 and, assuming he earns good-time credit, for release on September 25, 2026, with a full-term expiration date of February 15, 2020. Id.

The government reports that the defendant's case manager at Estill confirmed that he had asked to be released to home confinement, and that the request was denied on June 24, 2020. Dkt. No. 49 at 4. The government asserts that the defendant has exhausted his administrative remedies as required by the CARES Act. Id.

The government asserts that the place where the defendant proposes to live after his release—Gallion, Alabama in Hale County—has had 319 confirmed cases and twenty-one deaths, a high death-to-infection rate compared to Estill, with no deaths and only ten cases among staff. Id. at 9. It posits that the defendant likely is safer where he is than where he proposes to live upon release. Id.

The government also maintains that the plaintiff has not demonstrated any extraordinary and compelling reasons for his release. Id. at 10. It notes that the defendant's motion did not allege that he suffered from any medical conditions, and that the BOP classifies him among the healthiest inmates. Id. at 11. Rather, the government points out, the defendant asserts that his *mother* suffers from various health issues. Id. The government notes that the defendant has not asserted that there is no one to help or care for his mother, and in fact that he proposes that she act as a kind of third-party custodian for him. Id. at 11-12.

5

Finally, the government argues that the defendant was convicted of a serious drug offense, involving his admission to bringing between 300 and 500 kilograms of cocaine to Milwaukee during a two-year period. Id. at 13. The government advises the court that the defendant was a leader or organizer of the conspiracy for which he was convicted, and that he recruited and directed others to help him distribute cocaine. Id. A search of his residence produced a money counter, a kilogram of cocaine, thirty pounds of marijuana and drug trafficking paraphernalia. Id. He trafficked drugs in both Wisconsin and Michigan. Id. at 13-14. The government recounts how the defendant was released on bond pending sentencing, then was arrested for failure to stay in contact with his probation officer; he was arrested in a house in the Eastern District of Michigan that contained guns and drugs, and he tried to jump out the window to evade capture. Id.

The court allowed the defendant to file a reply brief. Dkt. No. 52. In the reply, the defendant says that his mother does not live in Hale County, Alabama, but in Marengo County, Alabama, a rural area with no cases on her road.[2] Dkt. No. 53 at 1. He asserts that he, himself, is at higher risk for severe illness if he contracts the virus because he has a body mass index of 32.7, is African American and is a man. Id. at 4. He disagrees with the government that his mother's health does not justify release, and he says that while his sister

---

[2] Marengo and Hale counties share a border, with Hale being directly north of Marengo. https://geology.com/county-map/alabama.shtml. While the Alabama Tourism Department indicates that Gallion is in Hale County, https://alabama.travel/places-to-go/cities-and-towns/gallion, it may be that Gallion straddles the two counties.

has been caring for his mother, his sister is moving to be closer to her job. Id. at 5-6. He says this will leave his mother with no one to care for her, and with no financial support. Id. at 6. As to the government's assertion that his crimes were very serious and that he is a danger to the community, the defendant agrees that his crimes were serious and says he is sorry. Id. at 6-7. He says he has learned a lot during his time in the prison system and has worked hard to rehabilitate himself, and he asserts that it is not fair to judge him by his past without considering all the hard work he has put in. Id. at 7. He says that despite the presence of drugs and alcohol in prison, he has stayed clean and he says his PATTERN risk assessment is low. Id. He vehemently disputes the government's assertion that anyone in his family, or among his friends, in Alabama has a criminal record or has been involved in criminal activity. Id. at 9-10.

While the caption of the defendant's motion cites 18 U.S.C. §3582(c)(1)(A)(i), which is the compassionate release provision of §3582, the specific relief the defendant requests at the beginning and end of his motion is for the court to modify his sentence to release him to home confinement. Dkt. No. 42 at 1, 23. The court does not have the authority grant that relief. Section 12003 of the CARES Act is the section that applies to the Bureau of Prisons. Section 12003(b)(1)(2) reads:

> HOME CONFINEMENT AUTHORITY.—During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the *Director of the Bureau* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section

7

3624(c)(2) of title 18, United States Code, as the *Director* deems appropriate.

CARES Act, Pub. L. 116-136, §12003(b)(1)(2) (emphasis added). "The BOP has the authority to place someone on home confinement, and to decide when to do so." <u>United States v. Menzie</u>, No. 11-cr-63-pp, 2020 WL 1991577, at *3 (E.D. Wis. Apr. 27, 2020) (citing 18 U.S.C. §3624(c)). The court does not have the authority to order the BOP to release someone to home confinement, or to "modify" someone's sentence to home confinement.

To the extent that the defendant is asking the court to reduce his sentence under the compassionate release provision of the First Step Act, he has not demonstrated that he is entitled to that relief. Generally, a court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. §3582(c). The compassionate release provision of the First Step Act makes an exception to that rule in certain narrow circumstances. It says:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the

> Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(b);
>
> And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

The first part of the statute—section (c)(1)(A)—says that the Director of the Bureau of Prisons may make a motion to the court, asking for a compassionate release sentence reduction. The BOP has not done that here.

In the alternative, the statute says that the *defendant* may make a motion to the court after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." It is not clear whether the defendant asked the warden at Estill for compassionate release under §3582—he may have asked only to be released to home confinement. Even if he did seek compassionate release from the warden at Estill, it does not appear that he sought to appeal the warden's decision through the BOP administrative remedies process.

Even if, as the government says, the defendant has exhausted his administrative remedies, the court will not grant him a compassionate release sentence reduction. Section 3852(c)(1)(A)(ii) doesn't apply to the defendant; he is not at least seventy years old (he is forty-five) and the BOP has not determined that he is not a danger to the community. So the only basis for the court to grant his motion would be §3582(c)(1)(A)(i)—if there were "extraordinary and compelling reasons" that warranted a sentence reduction. The application note to U.S.S.G. §1B1.13 defines "extraordinary and compelling" reasons:

(A) **Medical Condition of the Defendant.**—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples included metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

That substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The defendant does not fall into category (A). His motion does not allege that he suffers from any medical condition. In the August 2005 presentence

10

report, the defendant reported having no known health problems and taking no medications.[3] Dkt. No. 48-1 at ¶53. The BOP reports that he has no health problems and is not being treated for any medical conditions. The plaintiff asserts that he is at a higher risk because he has a BMI of 32.7. It is true that the CDC indicates that individuals with a body mass index of thirty or more are at increased risk of severe illness if they contract COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions/.html#obesity. It also is true that the CDC reports that Black or African American, Non-Hispanic people are 2.6 times more likely to contract the virus and 4.7 times more likely to be hospitalized if they become ill. https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html. But the defendant is healthy (despite being overweight), and no inmates at his facility are infected.

The defendant doesn't fall into category (B)—as noted, he is forty-five years old with no serious health issues. He does not fall into category (C)—he has not alleged that a caregiver for his children has passed away or is incapacitated, nor has he alleged that his spouse (the court is not aware of the defendant being married) or registered partner is incapacitated and he is the only person available to care for that spouse or partner. So the court must analyze whether there are some other extraordinary or compelling

---

[3] The defendant apparently has been shot twice and was once in a car accident. Dkt. No. 48-1 at ¶53.

circumstances in this defendant's particular case that warrant the compassionate release reduction. There are not.

The defendant is healthy. While the defendant's weight and race place him at higher risk for severe illness if he becomes infected, he is in a facility that has had no confirmed cases of COVID-19 among inmates (in contrast to facilities like FCI Elkton, Ohio, which has had hundreds). He is worried about his mother. The court can understand that. But that is not an "extraordinary or compelling" circumstance. Many inmates are worried about their loved ones even when there isn't a worldwide pandemic. Many are even more worried now, given the vulnerability of older people and people with underlying health conditions. If being worried about loved ones because of the virus were enough to justify compassionate release, most of the jails and prisons in the country would be empty.

Since the beginning of the COVID-19 crisis in mid-March, this court has received many compassionate release motions. Some have been from inmates who are in facilities with hundreds of confirmed cases of COVID-19. Some are from inmates who have seen fellow inmates die of the virus. Some are from inmates with high blood pressure, diabetes, mental health issues. At least one was from an inmate who had been infected with the virus. The court denied many of those motions, because the defendants did not demonstrate "extraordinary and compelling" circumstances. The defendant in this case is better off than many of those defendants.

The government also is correct that the defendant was convicted of a serious offense and wasn't deterred by being on bond for that offense. He apparently has had violations while in custody. The defendant responds that people change, and that he has done a lot to rehabilitate himself in the years he has been in prison. The court commends the defendant for using his time in prison wisely. And the court agrees with the defendant to an extent—concluding that because a person was a danger to the community fifteen years ago, he must still be a danger today is not necessarily fair. But the statute does require the court to consider the facts in 18 U.S.C. §3553(a) when deciding a motion for compassionate release, and one of those factors is "the nature and circumstances of the offense." 18 U.S.C. §3553(a)(1). It is proper for the government to point out that the nature and circumstances of the offense of which the defendant was convicted were very serious, even in comparison to other drug offenses.

The court does not mean to trivialize the defendant's concerns about COVID-19. The court knows that many incarcerated persons cannot practice social distancing, do not have masks, cannot wash their hands frequently, have no access to hand sanitizer. It is much harder for inmates to take the precautions that public health experts advise all of us to take to avoid the spread of this dangerous virus. The court understands why the defendant is afraid, and why he is worried about his mother.

If, however, fear of the virus was a basis for granting a sentence reduction for compassionate release, there would no longer be inmates in any

13

jails or prisons. The defendant has not demonstrated the extraordinary and compelling circumstances that would justify the sentence reduction he requests.

The court **DENIES** the defendant's motion to modify his sentence to home confinement. Dkt. No. 42.

Dated in Milwaukee, Wisconsin this 18th day of August, 2020.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **Chief United States District Judge**